UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| United States of America ) | |
| ) | |
| v.                       ) | Criminal Action No. 05-13 (WBB) |
| ) | |
| Franklin A. Dorn          ) | |
| ) | |
| Defendant.          ) | |

## MEMORANDUM

Defendant, Franklin Dorn, is charged in a three-count indictment with (1) Unlawful Possession with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (2) Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1); and (3) Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). The matter is currently before the Court on Defendant's Motion to Suppress Evidence Seized and Statements Taken in Violation of the Constitution, Defendant's Supplement to his Motion, and the Government's Oppositions thereto. For the following reasons, Defendant's request to suppress evidence will be denied. The Court reserves ruling on Defendant's request to suppress the statements.

## BACKGROUND

According to the evidence on the record, the events leading to Defendant's arrest are as follows. On December 11, 2004, at approximately 1:30 a.m., members of the Metropolitan Police Department were patrolling, in full uniform and in marked police cars, the area around the

Sursum Corda housing complex in Washington, D.C. (Hr'g. Tr. 7-9, 20, 24.) In the 1100 block of First Terrace N.W., officers observed Defendant leaning into the driver's side window of a red Ford Taurus that had stopped in the middle of the street. (Hr'g. Tr. 8.) The officers saw Defendant engage in a "hand-to-hand transaction" with the occupant of the car, conducting what appeared to be a "drug deal." (Hr'g Tr. 8.) Following this observation, the officers stopped the car and Sergeant Timothy Evans approached Defendant by foot and asked, "Can I speak with you?" Defendant ignored the question and immediately turned away. (Hr'g Tr. 9.) When Defendant did not reply, Sergeant Evans asked Defendant whether he had any guns or drugs on him. (Hr'g Tr. 9.) Instead of answering, Defendant continued to walk away. (Hr'g Tr. 9.) When Sergeant Evans could no longer see Defendant's hands, he walked up behind Defendant, reached his arms around to feel Defendant's waist area, and felt what he believed to be the butt of a handgun in Defendant's waistband. (Hr'g Tr. 9-11, 22.) As Sergeant Evans felt the gun, Defendant started to pull away. (Hr'g Tr. 11-12, 22.) Sergeant Evans then grabbed on to Defendant's jacket, but Defendant "shimmied" out of his jacket and fled, leaving his jacket with Sergeant Evans. (Hr'g Tr. 11-12, 22.)

At that point, Sergeant Evans' partner, Sergeant Neil, chased Defendant until he lost sight of him, then issued a lookout over the radio. (Hr'g Tr. 10, 22, 24.) Sergeant Laschon Harvell responded to the lookout and caught up with Defendant in the 1100 block of First Street, NW. (Hr'g Tr. 25-26.) As he approached Defendant, Sergeant Harvell observed Defendant bend over and reach down by his ankle, pull a gun out of his pant leg, and toss it to his left side. (Hr'g Tr. 26-27.) Sergeant Harvell subsequently apprehended Defendant and handcuffed him. (Hr'g Tr. 28.) When Sergeant Evans arrived at the scene with Defendant's jacket, he watched as another

officer reached into the left-front jacket pocket and pulled out a bag containing forty-nine rocks of crack cocaine. (Hr'g Tr. 14.) The officers recovered a .38 caliber Smith & Wesson handgun from the ground approximately five to ten feet from where they apprehended Defendant. (Hr'g Tr. 13, 28-29.)

Defendant now asks the Court to suppress the crack cocaine and gun seized on December 11, 2004. Defendant argues that Sergeant Evans' actions constitute an "arrest" for which Sergeant Evans lacked probable cause. Alternatively, Defendant argues that Sergeant Evans lacked even reasonable suspicion to conduct an investigatory stop and frisk. Because the Court finds that (1) Sergeant Evans conducted a legal investigatory stop and frisk; and (2) Defendant abandoned the gun and drugs, Defendant's request for suppression of the evidence will be denied.

## DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures. "[M]ere police questioning does not constitute a seizure" under the Fourth Amendment. Florida v. Bostick, 501 U.S. 429, 434 (1991). However, once a "reasonable person would [no longer] feel free to terminate [an] encounter" with the police, United States v. Drayton, 536 U.S. 194, 201 (2002), the police must have sufficient justification to warrant further intrusion. See Terry v. Ohio, 392 U.S. 1, 20-21 (1968) (relevant inquiry is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place"). To justify an investigative detention, or Terry stop, the police must have reasonable suspicion that criminal activity may be afoot. See id. at 20-27, 30. The reasonable suspicion standard requires only a "minimal level of objective justification," a

"showing considerably less than preponderance of the evidence." United States v. Edmonds, 240 F.3d. 55, 59 (D.C. Cir. 2001) (citations omitted).

Once a police officer makes a lawful Terry stop, the officer may conduct a limited pat-down frisk of a suspect's outer clothing if the officer has a "reasonable fear" that the suspect may be armed. Terry, 392 U.S. at 30-31. A legitimate Terry stop may cross the line into an arrest "if the duration of the stop or the amount of force used is 'unreasonable' under the circumstances." United States v. Mangum, 100 F.3d 164, 169 (D.C. Cir. 1996) (internal citation omitted). "The government carries the burden of showing that the measures employed during the stop were justified." Id.

Applying these standards to the present case, the Court finds that Sergeant Evans' interaction with Defendant never crossed the line into full blown arrest and that a seizure under the Fourth Amendment did not occur until Sergeant Evans conducted the pat-down search of Defendant. Until that time, Sergeant Evans did not physically lay a hand on Defendant, nor did Defendant submit to a show of Sergeant Evans' authority. Terry, 392 U.S. at 20 n.16 (A seizure arises "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . ."). To be sure, until then, Defendant walked away freely.

Like in Terry, 392 U.S. at 19, 20 n.16, the seizure and pat-down frisk in this case were coincident. Therefore, the Court must determine whether all the facts and circumstances known at that point, taken together with rational inferences from the facts, support both a finding of reasonable suspicion that Defendant was engaged in criminal activity, see id. at 21-22, and a reasonable belief that Defendant was armed, see id. at 23-24. In assessing these issues, the Court recognizes that "a single factor might not itself be sufficiently probative of wrongdoing to give

rise to a reasonable suspicion, [but] the combination of several factors -- especially when viewed through the eyes of an experienced officer -- may. Edmonds, 240 F.3d. at 60 (citations omitted).

In this case, several circumstances, taken together, support the reasonableness of both Sergeant Evans' suspicion of criminal activity and his fear of danger. First, Sergeant Evans testified that he saw Defendant engage in a "hand-to-hand transaction" which, in his nineteen-years' experience as a police officer, appeared to be a "drug deal." (Hr'g Tr. 8.) True, Sergeant Evans could not identify any exchanged objects (e.g., drugs, money, other contraband); however, Terry does not require that officers witness the actual commission of a crime in order to investigate. 392 U.S. at 22 (embracing the ability of police to "investigate[] *possibly criminal behavior* even though there is no probable cause to make an arrest") (emphasis added). Although the D.C. Circuit has suggested that "simply receiving an object from another person . . . is a common occurrence for which there could be many explanations," United States v. Johnson, 212 F.3d 1313, 1316 (D.C. Cir. 2000), the "hand-to-hand" transaction in this case is coupled with a number of other circumstances that support Sergeant Evans' reasonable suspicion that Defendant was engaged in criminal activity.[1] E.g., United States v. Lovelace, 357 F.Supp. 2d 39, 44 (D.D.C. 2004).

First is the fact that the above incident took place at 1:30 a.m. in Sursum Corda, a neighborhood known for "its open-air drug markets, guns, gun activity, homicides, and

---

[1] The fact that some of Defendant's individual actions may have been "ambiguous and susceptible of an innocent explanation" does not require that those actions be struck as circumstances considered as grounds for suspicion. See Illinois v. Wardlow, 528 U.S. 119, 125-26 (2000) ("Terry recognized that . . . officers could detain individuals to resolve [any] ambiguity."); see also Terry, 392 U.S. at 23-24 ("[A] series of acts, each of them perhaps innocent in itself, [may] when taken together warrant[] further investigation.").

shootings, and violent crime." (Hr'g Tr. 6). See, e.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000) (presence in a high crime area, "standing alone, is not enough to support reasonable, particularized suspicion that the person is committing a crime," however, it is "among the relevant contextual considerations in a Terry analysis"); Edmonds, 240 F.3d at 60 ("[T]he probative value of a neighborhood's reputation as a high-crime area is firmly established."); United States v. Brown, 334 F.3d 1161, 1165 (D.C. Cir. 2003) (finding the importance of a high-crime neighborhood as a factor "further compounded by the lateness of the hour").

The Court also considers Defendant's behavior in response to Sergeant Evans' questions. Upon questioning by Sergeant Evans, an officer in full uniform and in a marked car, Defendant ignored the questions, turned, and walked away. (Hr'g Tr. 22.) While "[w]alking away from the police hardly amounts to headlong flight" and "would not give rise to reasonable suspicion by itself, even in a high-crime area," it is, contrary to Defendant's assertion, certainly one of several factors to "be considered in the totality of the circumstances." United States v. Valentine, 232 F.3d 350, 357 (3d Cir. 2000); see also United States v. Lovelace, 357 F.Supp. 2d 39, 44 (D.D.C. 2004) (considering a suspect's walking away from police as a "furtive movement" to be included in reasonable suspicion analysis); Johnson, 212 F.3d at 1316 (furtive movements are significant to a Terry analysis only if they are undertaken in response to known police presence). Cf. United States v. Patterson, 340 F.3d 368, 371-72 (6th Cir. 2003) (walking away from police, without more, is innocent behavior to be "outrightly dismissed" and insufficient alone to provide police with reasonable suspicion).

Faced with these circumstances, Sergeant Evans attempted a limited and spontaneous "frisk" of Defendant's waistband. Sergeant Evans testified that as Defendant walked away from

him, and when he could no longer see Defendant's hands, he reached from behind to pat down Defendant's waistband area. (Hr'g Tr. 22.) Sergeant Evans further testified that in his experience, the waistband area is the area most commonly used by armed persons to carry and conceal a weapon. (Hr'g Tr. 22.) Reaching around Defendant to touch his waistband was limited and tailored to Sergeant Evans' fear that Defendant might be armed and able to access his gun without Sergeant Evans knowing. Accordingly, the facts and circumstances underlying the stop and frisk in this case support the finding that Sergeant Evans' actions were objectively reasonable and lawful.

Upon completing a lawful stop and frisk, and feeling the butt of the gun, Sergeant Evans had probable cause to arrest Defendant for gun possession and to conduct a warrantless search of Defendant incident to his arrest. However, Sergeant Evans did not have the chance to take these actions. Instead, Defendant fled, leaving his jacket behind and, subsequently, throwing away a handgun. (Hr'g Tr. 10-11. 26-27.)

In this Circuit, "a warrantless search [or seizure] of abandoned property does not violate the [F]ourth Amendment." United States v. Most, 876 F.2d 191, 196 (D.C. Cir. 1989) (citing Abel v. United States, 362 U.S. 217, 241 (1960)). By shedding his jacket, which contained forty-nine rocks of crack cocaine, and by throwing away the gun, Defendant "effectively abandoned any [privacy] interest" in those items. United States v. Jackson, 360 F.Supp. 2d 24, 27-28 (D.D.C. 2003) (finding that "[b]y throwing [a] plastic bag [of heroin] over a fence and onto someone else's property, [a] defendant effectively abandons any interest in the bag . . . [and gives] up any expectation of privacy he may have had . . . ."). Accordingly, the crack cocaine and the gun will not be suppressed.

## CONCLUSION

For the reasons set forth above, in an accompanying Order, this Court will deny Defendant's request to suppress the evidence seized. The Court reserves ruling on Defendant's request to suppress statements.

                                          /s/ William B. Bryant
                                          William B. Bryant
                                          Senior United States District Judge

DATE: Sept. 8, '05